**EXHIBIT B**

BK: 1800 PG: 399-410
Filed and Recorded
01-10-2025 08:01 AM

ANGELA ELDER-JOHNSON
CLERK OF SUPERIOR COURT
OCONEE COUNTY
Intangible Tax
Paid : $ 495.00

After Recording Return To:
Rocket Mortgage, LLC
1050 Woodward Ave
Detroit, MI 48226-1906

Prepared By:
Rujina Sharmin
Rocket Mortgage, LLC
1050 Woodward Ave
Detroit, MI 48226-1906
(800) 226-6308

---

[Space Above This Line For Recording Data]

## SECURITY DEED

Document Date: **January 6, 2025**
Names of Signatories: **Steven Adam Shinn; and Susanna Lynn Shinn**
Grantee's Mailing Address: P.O. Box 2026, Flint, Michigan 48501-2026
Loan Amount: **$165,000.00**
Maturity Date: **February 1, 2045**
Intangible Recording Tax: **$495.00**



THIS DEED is made this **6th** day of **January, 2025**, between the Grantor, **Steven Adam Shinn and Susanna Lynn Shinn, husband and wife** (herein "Borrower"), and the Grantee, Mortgage Electronic Registration Systems, Inc., ("MERS"), solely as nominee for Lender, as hereinafter defined, and Lender's successors and assigns, as grantee. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of Flint, MI 48501-2026 , tel. (888) 679-MERS. **Rocket Mortgage, LLC,** ("Lender") is organized and existing under the laws of **the State of Michigan**, and has an address of **1050 Woodward Ave, Detroit, MI 48226-1906.**

WHEREAS, Borrower is indebted to Lender in the principal sum of U.S. **$165,000.00**, which indebtedness is evidenced by Borrower's note dated **January 6, 2025** and extensions and renewals thereof (herein "Note"), providing for monthly installments of principal and interest, with the balance of indebtedness, if not sooner paid, due and payable on **February 1, 2045**;

TO SECURE to Lender the repayment of the indebtedness evidenced by the Note, with interest thereon; the payment of all other sums, with interest thereon, advanced in accordance herewith to protect the security of this Deed to Secure Debt; and the performance of the covenants and agreements of Borrower herein contained, Borrower does hereby grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, with power of sale, the following described property located in the County of **Oconee**, State of Georgia:
**See Exhibit "A"- Legal Description Hereto and Made a Part Hereof. Subject to Covenants of Record.**
which has the address of **1210 Lexington Ct, Bishop, GA 30621-6223** (herein "Property



Address");

TO HAVE AND TO HOLD such property unto MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, forever, together with all the improvements now or hereafter erected on the property, and all easements, rights, appurtenances and rents, all of which shall be deemed to be and remain a part of the property covered by this Deed; and all of the foregoing, together with said property (or the leasehold estate if this Deed is on a leasehold) are hereinafter referred to as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Deed; but, if necessary to comply with law or custom, MERS, (as nominee for Lender and Lender's successors and assigns), has the right: to exercise any or all of those interests, including but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing or canceling this Deed.

Borrower covenants that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property, and that the Property is unencumbered, except for encumbrances of record. Borrower covenants that Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to encumbrances of record.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal and Interest.** Borrower shall promptly pay when due the principal and interest indebtedness evidenced by the Note and late charges as provided in the Note.

**2. Funds for Taxes and Insurance.** Subject to applicable law or a written waiver by Lender, Borrower shall pay to Lender on the day monthly payments of principal and interest are payable under the Note, until the Note is paid in full, a sum (herein "Funds") equal to one-twelfth of the yearly taxes and assessments (including condominium and planned unit development assessments, if any) which may attain priority over this Deed, and ground rents on the Property, if any, plus one-twelfth of yearly premium installments for hazard insurance, plus one-twelfth of yearly premium installments for mortgage insurance, if any, all as reasonably estimated initially and from time to time by Lender on the basis of assessments and bills and reasonable estimates thereof. Borrower shall not be obligated to make such payments of Funds to Lender to the extent that Borrower makes such payments to the holder of a prior security deed, mortgage or deed of trust if such holder is an institutional lender.

If Borrower pays Funds to Lender, the Funds shall be held in an institution the deposits or accounts of which are insured or guaranteed by a federal or state agency (including Lender if Lender is such an institution). Lender shall apply the Funds to pay said taxes, assessments, insurance premiums and ground rents. Lender may not charge for so holding and applying the Funds, analyzing said account or verifying and complying said assessments and bills, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. Borrower and Lender may agree in writing at the time of execution of this Deed that interest on the Funds shall be paid to Borrower, and unless such agreement is made or applicable law requires such interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for the sums secured by this Deed.

If the amount of the Funds held by Lender, together with the future monthly installments of Funds payable prior to the due dates of taxes, assessments, insurance premiums and ground rents, shall exceed the

amount required to pay said taxes, assessments, insurance premiums and ground rents as they fall due, such excess shall be, at Borrower's option, either promptly repaid to Borrower or credited to Borrower on monthly installments of Funds. If the amount of the Funds held by Lender shall not be sufficient to pay taxes, assessments, insurance premiums and ground rents as they fall due, Borrower shall pay to Lender any amount necessary to make up the deficiency in one or more payments as Lender may require.

Upon payment in full of all sums secured by this Deed, Lender shall promptly refund to Borrower any Funds held by Lender. If under paragraph 17 hereof the Property is sold or the Property is otherwise acquired by Lender, Lender shall apply, no later than immediately prior to the sale of the Property or its acquisition by Lender, any Funds held by Lender at the time of application as a credit against the sums secured by this Deed.

**3. Application of Payments.** Unless applicable law provides otherwise, all payments received by Lender under the Note and paragraphs 1 and 2 hereof shall be applied by Lender first in payment of amounts payable to Lender by Borrower for interest payable on the Note, then to the principal of the Note, and then to amounts under paragraph 2 hereof, if any.

If Lender receives a payment from Borrower for a delinquent periodic payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one periodic payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the periodic payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more periodic payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or miscellaneous proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the periodic payments.

**4. Prior Deeds to Secure Debt; Mortgages and Deeds of Trust; Charges; Liens.** Borrower shall *perform all of Borrower's obligations under any security deed, mortgage, deed of trust or other security* agreement with a lien which has priority over this Deed, including Borrower's covenants to make payments when due. Borrower shall pay or cause to be paid all taxes, assessments and other charges, fines and impositions attributable to the Property which may attain a priority over this Deed, and leasehold payments or ground rents, if any.

**5. Hazard Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and such other hazards as Lender may require and in such amounts and for such periods as Lender may require.

The insurance carrier providing the insurance shall be chosen by Borrower subject to the approval by Lender; provided, that such approval shall not be unreasonably withheld. All insurance policies and renewals thereof shall be in a form acceptable to Lender and shall include a standard mortgage clause in favor of and in a form acceptable to Lender. Lender shall have the right to hold the policies and renewals thereof, subject to the terms of any security deed, mortgage, deed of trust or other security agreement with a lien which has priority over this Deed.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

If the Property is abandoned by Borrower, or if Borrower fails to respond to Lender within 30 days from the date notice is mailed by Lender to Borrower that the insurance carrier offers to settle a claim for insurance benefits, Lender is authorized to collect and apply the insurance proceeds at Lender's option either

to restoration or repair of the Property or to the sums secured by this Deed.

**6. Preservation and Maintenance of Property; Leaseholds; Condominiums; Planned Unit Developments.** Borrower shall keep the Property in good repair and shall not commit waste or permit impairment or deterioration of the Property and shall comply with the provisions of any lease if this Deed is on a leasehold. If this Deed is on a unit in a condominium or a planned unit development, Borrower shall perform all of Borrower's obligations under the declaration or covenants creating or governing the condominium or planned unit development, the by-laws and regulations of the condominium or planned unit development, and constituent documents.

**7. Protection of Lender's Security.** If Borrower fails to perform the covenants and agreements contained in this Deed, or if any action or proceeding is commenced which materially affects Lender's interest in the Property, then Lender, at Lender's option, upon notice to Borrower, may make such appearances, disburse such sums, including reasonable attorneys' fees, and take such action as is necessary to protect Lender's interest. If Lender required mortgage insurance as a condition of making the loan secured by this Deed, Borrower shall pay the premiums required to maintain such insurance in effect until such time as the requirement for such insurance terminates in accordance with Borrower's and Lender's written agreement or applicable law.

Any amounts disbursed by Lender pursuant to this paragraph 7, with interest thereon, at the Note rate, shall become additional indebtedness of Borrower secured by this Deed. Unless Borrower and Lender agree to other terms of payment, such amounts shall be payable upon notice from Lender to Borrower requesting payment thereof. Nothing contained in this paragraph 7 shall require Lender to incur any expense or take any action hereunder.

**8. Inspection.** Lender may make or cause to be made reasonable entries upon and inspections of the Property, provided that Lender shall give Borrower notice prior to any such inspection specifying reasonable cause therefor related to Lender's interest in the Property.

**9. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of the Property, or part thereof, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender, subject to the terms of any security deed, mortgage, deed of trust or other security agreement with a lien which has priority over this Deed.

**10. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Deed granted by Lender to any successor in interest of Borrower shall not operate to release, in any manner, the liability of the original Borrower and Borrower's successors in interest. Lender shall not be required to commence proceedings against such successor or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Deed by reason of any demand made by the original Borrower and Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy hereunder, or otherwise afforded by applicable law, shall not be a waiver of or preclude the exercise of any such right or remedy.

**11. Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements herein contained shall bind, and the rights hereunder shall inure to, the respective successors and assigns of Lender and Borrower, subject to the provisions of paragraph 16 hereof. All covenants and agreements of Borrower shall be joint and several. Any Borrower who co-signs this Deed, but does not execute the Note, (a) is co-signing this Deed only to grant and convey that Borrower's interest in the Property to Lender under the terms of this Deed, (b) is not personally liable on the Note or under this Deed, and (c) agrees that Lender and any other Borrower hereunder may agree to extend, modify, forbear, or make any

EX  477.47                                        Page 4 of 8



other accommodations with regard to the terms of this Deed or the Note, without that Borrower's consent and without releasing that Borrower or modifying this Deed as to that Borrower's interest in the Property.

**12. Notice.** Except for any notice required under applicable law to be given in another manner, (a) any notice to Borrower provided for in this Deed shall be given by delivering it or by mailing such notice by first class mail addressed to Borrower at the Property Address or at such other address as Borrower may designate by notice to Lender as provided herein, and (b) any notice to Lender shall be given by first class mail to Lender's address stated herein or to such other address as Lender may designate by notice to Borrower as provided herein. Any notice provided for in this Deed shall be deemed to have been given to Borrower or Lender when given in the manner designated herein.

**13. Governing Law; Severability.** The state and local laws applicable to this Deed shall be the laws of the jurisdiction in which the Property is located. The foregoing sentence shall not limit the applicability of federal law to this Deed. In the event that any provision or clause of this Deed or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Deed or the Note which can be given effect without the conflicting provision, and to this end the provisions of this Deed and the Note are declared to be severable. As used herein, "costs," "expenses" and "attorneys' fees" include all sums to the extent not prohibited by applicable law or limited herein.

**14. Borrower's Copy.** Borrower shall be furnished a conformed copy of the Note and of this Deed at the time of execution or after recordation hereof.

**15. Rehabilitation Loan Agreement.** Borrower shall fulfill all of Borrower's obligations under any home rehabilitation, improvement, repair, or other loan agreement which Borrower enters into with Lender. Lender, at Lender's option, may require Borrower to execute and deliver to Lender, in a form acceptable to Lender, an assignment of any rights, claims or defenses which Borrower may have against parties who supply labor, materials or services in connection with improvements made to the Property.

**16. Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Deed. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Deed.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Deed. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Deed without further notice or demand on Borrower.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**17. Acceleration; Remedies. Except as provided in paragraph 16 hereof, upon Borrower's breach of any covenant or agreement of Borrower in this Deed, including the covenants to pay when due any sums secured by this Deed, Lender prior to acceleration shall give notice to Borrower as provided in paragraph 12 hereof specifying: (1) the breach; (2) the action required to cure such breach; (3) a date, not less than 30 days from the date the notice is mailed to Borrower, by which such breach must be cured; and (4) that failure to cure such breach on or before the date specified in the notice may result in acceleration of the sums secured by this Deed, and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court**

action to assert the nonexistence of a default or any other defense of Borrower to acceleration and sale. If the breach is not cured on or before the date specified in the notice, Lender, at Lender's option, may declare all of the sums secured by this Deed to be immediately due and payable without further demand and may invoke the power of sale herein granted (and Borrower hereby appoints Lender the agent and attorney-in-fact for Borrower to exercise said power of sale) and any other remedies permitted by applicable law. Lender shall be entitled to collect all reasonable costs and expenses incurred in pursuing the remedies provided in this paragraph 17, including, but not limited to, reasonable attorneys' fees.

If Lender invokes the power of sale, Lender shall mail a copy of a notice of sale to Borrower in the manner provided in paragraph 12 hereof and shall give notice of sale by public advertisement for the time and in the manner prescribed by applicable law. Lender, without further demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in such order as Lender may determine. Lender or Lender's designee may purchase the Property at any sale.

Lender shall deliver to the purchaser Lender's deed to the Property in fee simple and Borrower hereby appoints Lender Borrower's agent and attorney-in-fact to make such conveyance. The recitals in Lender's deed shall be prima facie evidence of the truth of the statements made therein. Borrower covenants and agrees that Lender shall apply the proceeds of the sale in the following order: (a) to all reasonable costs and expenses of the sale, including, but not limited to, reasonable attorneys' fees and costs of title evidence; (b) to all sums secured by this Deed; and (c) the excess, if any, to the person or persons legally entitled thereto. The power and agency hereby granted are coupled with an interest, are irrevocable by death or otherwise and are cumulative to the remedies for collection of said indebtedness as provided by law and costs of title evidence.

If the Property is sold pursuant to this paragraph 17, Borrower, or any person holding possession of the Property through Borrower, shall immediately surrender possession of the Property to the purchaser at such sale. If possession is not surrendered, Borrower or such person shall be a tenant holding over and may be dispossessed in accordance with applicable law.

18. **Borrower's Right to Reinstate.** Notwithstanding Lender's acceleration of the sums secured by this Deed due to Borrower's breach, Borrower shall have the right to have any proceedings begun by Lender to enforce this Deed discontinued at any time prior to the earlier to occur of (i) the fifth day before sale of the Property pursuant to the power of sale contained in this Deed or (ii) entry of a judgment enforcing this Deed if: (a) Borrower pays Lender all sums which would be then due under this Deed and the Note had no acceleration occurred; (b) Borrower cures all breaches of any other covenants or agreements of Borrower contained in this Deed; (c) Borrower pays all reasonable expenses incurred by Lender in enforcing the covenants and agreements of Borrower contained in this Deed, and in enforcing Lender's remedies as provided in paragraph 17 hereof, including, but not limited to, reasonable attorneys' fees; and (d) Borrower takes such action as Lender may reasonably require to assure that the lien of this Deed, Lender's interest in the Property and Borrower's obligation to pay the sums secured by this Deed shall continue unimpaired. Upon such payment and cure by Borrower, this Deed and the obligations secured hereby shall remain in full force and effect as if no acceleration had occurred.

19. **Assignment of Rents; Appointment of Receiver; Lender in Possession.** As additional security hereunder, Borrower hereby assigns to Lender the rents of the Property, provided that Borrower shall, prior to acceleration under paragraph 17 hereof or abandonment of the Property, have the right to



GA  477.47                           Page 6 of 8



collect and retain such rents as they become due and payable.

Upon acceleration under paragraph 17 hereof or abandonment of the Property, Lender, in person, by agent or by judicially appointed receiver shall be entitled to enter upon, take possession of and manage the Property and to collect the rents of the Property including those past due. All rents collected by Lender or the receiver shall be applied first to payment of the costs of management of the Property and collection of rents, including, but not limited to, receiver's fees, premiums on receiver's bonds and reasonable attorneys' fees, and then to the sums secured by this Deed. Lender and the receiver shall be liable to account only for those rents actually received.

**20. Release.** Upon payment of all sums secured by this Deed, Lender shall cancel this Deed without charge to Borrower. Borrower shall pay all costs of recordation, if any. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**21. Waiver of Homestead.** Borrower hereby waives all right of homestead exemption in the Property.

**22. Assumption Not a Novation.** Lender's acceptance of an assumption of the obligations of this Deed and the Note, and any release of Borrower in connection therewith, shall not constitute a novation.

**23. Deed to Secure Debt.** This conveyance is to be construed under the existing laws of the State of Georgia as a security deed passing title, and not as a mortgage, and is intended to secure the payment of all sums secured hereby.

REFERENCE IS HEREBY MADE TO THE RIDER(S) ATTACHED HERETO AND MADE A PART HEREOF FOR ALL PURPOSES:

☐ *Adjustable Rate Rider*      ☐ *Condominium Rider*      ☐ *Second Home Rider*
☐ Balloon Rider      ☒ Planned Unit Development Rider      ☐ Biweekly Payment Rider
☐ 1-4 Family Rider      ☐ Other(s) [specify]

**REQUEST FOR NOTICE OF DEFAULT
AND FORECLOSURE UNDER SUPERIOR
MORTGAGES OR DEEDS OF TRUST**

Borrower and Lender request the holder of any security deed, mortgage, deed of trust or other encumbrance with a lien which has priority over this Security Deed to give Notice to Lender, at Lender's address set forth on page one of this Security Deed, of any default under the superior encumbrance and of any sale or other foreclosure action.



IN WITNESS WHEREOF, BORROWER has executed and sealed this Deed.

- BORROWER - Steven Adam Shinn - DATE -

Susanna Lynn Shinn - DATE -

Signed, sealed and delivered in the presence of:

Dakota Shinn

Unofficial Witness

Notary Public

My commission expires: _
[NOTARY SEAL]

Notary Public, Oconee County

JON W. FIEBELKORN
Notary Public - State of Georgia
Hart County
My Comm. Expires Jan. 18, 2029

[Space Below This Line For Acknowledgment]

## PLANNED UNIT DEVELOPMENT RIDER

███████████████████████

THIS PLANNED UNIT DEVELOPMENT RIDER is made this **6th** day of **January, 2025**, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date, given by the undersigned (the "Borrower") to secure Borrower's Note to **Rocket Mortgage, LLC** (the "Lender") of the same date and covering the Property described in the Security Instrument and located at: **1210 Lexington Ct, Bishop, GA 30621-6223**

The Property includes, but is not limited to, a parcel of land improved with a dwelling, together with other such parcels and certain common areas and facilities, as described in THE COVENANTS, CONDITIONS AND RESTRICTIONS FILED OF RECORD THAT AFFECT THE PROPERTY. (the "Declaration"). The Property is a part of a planned unit development known as **North Oconee** (the "PUD"). The Property also includes Borrower's interest in the homeowners association or equivalent entity owning or managing the common areas and facilities of the PUD (the "Owners Association") and the uses, benefits and proceeds of Borrower's interest.

**PUD COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A. PUD Obligations.** Borrower shall perform all of Borrower's obligations under the PUD's Constituent Documents. The "Constituent Documents" are the (i) Declaration;

███████████████████████████████████████████████

**MULTISTATE PUD RIDER**--Single Family/Second Mortgage--**Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**
EX 2483.18                                    Form 3150   1/01     *(page 1 of 3 pages)*
                                                                              **Amended**

███████████████████████████████

(ii) articles of incorporation, trust instrument or any equivalent document which creates the Owners Association; and (iii) any by-laws or other rules or regulations of the Owners Association. Borrower shall promptly pay, when due, all dues and assessments imposed pursuant to the Constituent Documents.

    **B. Property Insurance.** So long as the Owners Association maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy insuring the Property *which is satisfactory to Lender and which provides insurance coverage in the amounts* (including deductible levels), for the periods, and against loss by fire, hazards included within the term "extended coverage," and any other hazards, including, but not limited to, earthquakes and floods, for which Lender requires insurance, then Borrower's obligation under Uniform Covenant 5 to maintain property insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy.

    What Lender requires as a condition of this waiver can change during the term of the loan.

    Borrower shall give Lender prompt notice of any lapse in required property insurance coverage provided by the master or blanket policy.

    In the event of a distribution of property insurance proceeds in lieu of restoration or repair following a loss to the Property, or to common areas and facilities of the PUD, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender. Lender shall apply the proceeds to the sums secured by the Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

    **C. Public Liability Insurance.** Borrower shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender.

    **D. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, payable to Borrower in connection with any condemnation or other taking of all or any part of the Property or the common areas and facilities of the PUD, or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Such proceeds shall be applied by Lender to the sums secured by the Security Instrument as provided in Uniform Covenant 9.

    **E. Lender's Prior Consent.** Borrower shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to: (i) the abandonment or termination of the PUD, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain; (ii) any amendment to any provision of the "Constituent Documents" if the provision is for the express benefit of Lender; (iii) termination of professional management and assumption of self-management of the

MULTISTATE PUD RIDER--Single Family/Second Mortgage--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
2483.18                                   **Form 3150   1/01**     *(page 2 of 3 pages)*
                                                                                 **Amended**

Owners Association; or (iv) any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

    **F. Remedies.** If Borrower does not pay PUD dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph F shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date *of disbursement at the Note rate and shall be payable, with interest, upon notice from* Lender to Borrower requesting payment.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this PUD Rider.

- BORROWER - Steven Adam Shinn - DATE -    1 6 25

Susanna Lynn Shinn - DATE -    1 6 25

**MULTISTATE PUD RIDER**--Single Family/Second Mortgage--**Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**
EX  2483.18                                Form 3150    1/01    *(page 3 of 3 pages)*
                                                                **Amended**

EXHIBIT A - LEGAL DESCRIPTION

Tax Id Number(s █████████

Land situated in the County of Oconee in the State of GA

ALL THAT TRACT OR PARCEL OF LAND, TOGETHER WITH ALL IMPROVEMENTS THEREON, SITUATE, LYING AND BEING IN THE 239TH DISTRICT, G.M., OCONEE COUNTY, GEORGIA, CONTAINING 5.837 ACRES, MORE OR LESS, AND BEING KNOWN AND DESIGNATED AS LOT 18, STEEPLECHASE SUBDIVISION, AND BEING MORE PARTICULARLY SHOWN ON A SURVEY ENTITLED "FINAL PLAT FOR STEEPLE CHASE", DATED OCTOBER 6, 2000, BY WOODS AND CHASTAIN SURVEYORS, INC., PHILLIP D. CHASTAIN, REGISTERED LAND SURVEYOR, AND RECORDED IN PLAT BOOK 32, PAGES 171-172, THE OFFICE OF CLERK OF THE SUPERIOR COURT OF OCONEE COUNTY, GEORGIA, REFERENCE TO WHICH HEREBY MADE FOR A MORE PARTICULAR DESCRIPTION OF THE PROPERTY HEREIN CONVEYED.

Commonly known as:   1210 Lexington Ct, Bishop, GA 30621-6223

THE PROPERTY ADDRESS AND TAX PARCEL IDENTIFICATION NUMBER LISTED ARE PROVIDED SOLELY FOR INFORMATIONAL PURPOSES.

BK: 1853 PG: 19-21
Filed and Recorded
04-17-2026 09:20 AM

ANGELA ELDER-JOHNSON
CLERK OF SUPERIOR COURT
OCONEE COUNTY

**Recording Requested By/Return To:**

Final Docs Team

1050 Woodward Ave.

Detroit, MI 48226

**This Instrument Prepared By:**

Hannah Wloch

Rocket Mortgage, LLC

1050 Woodward Ave.

Detroit, MI 48226

Tel No.: (800) 226-6308 ext. 34780

## Assignment of Security Deed

State of Georgia

County of OCONEE

FOR VALUE RECEIVED, Mortgage Electronic Registration Systems, Inc. ("MERS") as grantee, as nominee for
Rocket Mortgage, LLC ,whose address is P.O. Box 2026, Flint, MI 48501-2026
its successors and assigns, does hereby grant, assign, transfer and convey, unto Rocket Mortgage, LLC, FKA Quicken Loans, LLC    , a corporation organized and existing under the laws of the state of Michigan    herein "Assignee"), whose address is 1050 Woodward Ave. Detroit , MI 48226
, its successors and assigns, all its right, title and interest in and to a certain Mortgage dated    January 6, 2025    , made and executed by
STEVEN ADAM SHINN AND SUSANNA LYNN SHINN, HUSBAND AND WIFE

whose address is  1210 Lexington Ct Bishop GA, 30621
to and in favor of Mortgage Electronic Registration Systems, Inc ("MERS") as grantee, as nominee for Rocket Mortgage, LLC , its successors and assigns

upon the
following described property situated in  OCONEE    County, State
of Georgia                          :

Tax Parcel #:

Mortgage Recorded On: 01/10/2025                Book/Liber#:
Document Number:                                Page#:399
MIN:                        MERS Phone: 1-888-679-6377

MERS Assignment of Mortgage
VMP ®
Wolters Kluwer Financial Services  © 2000, 2011

VMP95M (1104).00
Page 1 of 3

such Mortgage having been given to secure payment
One Hundred Sixty Five Thousand Dollars and 00/100
        ($ 165,000.00        ) (Include the Original Principal Amount) which Mortgage is of record
in Book, Volume, or Liber No.    1800                , at page  399                (or as No.
D2025-000126                  ) of the                              Records of
                                                OCONEE    County, State of
Georgia                              and all rights accrued or to accrue under such Mortgage.
        TO HAVE AND TO HOLD, the  same unto Assignee, its successors and assigns, forever, subject only to
the term  and conditions of the above-described Mortgage.
            IN WITNESS WHEREOF, the undersigned Assignor has executed this Assignment of Mortgage on
April 16, 2026.

Witness  Hannah Wloch

Witness  Donnelia Smith

Attest

**Mortgage Electronic Registration Systems, Inc.
("MERS")** as grantee, as nominee for
Rocket Mortgage, LLC , its successors and assigns

By: _____
                        (Signature)

Name: Jacob Akers
Title: Assistant Secretary of MERS

**Signed, sealed and delivered in the presence of:**

Name  McKenzie Palchak
Title: Notary Public

MCKENZIE PALCHAK
NOTARY PUBLIC - STATE OF MICHIGAN
COUNTY OF WAYNE
My Commission Expires January 24, 2028
Acting in the County of WAYNE

MERS Assignment of Mortgage
VMP ®
Wolters Kluwer Financial Services © 2000, 2011

VMP95M (1104).00
Page 2 of 3

## EXHIBIT A - LEGAL DESCRIPTION

Tax Id Number(s): ▮▮▮▮▮

Land situated in the County of Oconee in the State of GA

ALL THAT TRACT OR PARCEL OF LAND, TOGETHER WITH ALL IMPROVEMENTS THEREON, SITUATE, LYING AND BEING IN THE 239TH DISTRICT, G.M., OCONEE COUNTY, GEORGIA, CONTAINING 5.837 ACRES, MORE OR LESS, AND BEING KNOWN AND DESIGNATED AS LOT 18, STEEPLECHASE SUBDIVISION, AND BEING MORE PARTICULARLY SHOWN ON A SURVEY ENTITLED "FINAL PLAT FOR STEEPLE CHASE", DATED OCTOBER 6, 2000, BY WOODS AND CHASTAIN SURVEYORS, INC., PHILLIP D. CHASTAIN, REGISTERED LAND SURVEYOR, AND RECORDED IN PLAT BOOK 32, PAGES 171-172, THE OFFICE OF CLERK OF THE SUPERIOR COURT OF OCONEE COUNTY, GEORGIA, REFERENCE TO WHICH HEREBY MADE FOR A MORE PARTICULAR DESCRIPTION OF THE PROPERTY HEREIN CONVEYED.

Commonly known as:   1210 Lexington Ct, Bishop, GA 30621-6223

THE PROPERTY ADDRESS AND TAX PARCEL IDENTIFICATION NUMBER LISTED ARE PROVIDED SOLELY FOR INFORMATIONAL PURPOSES.